GEORGE HANLEY v. GEORGE W. BALCH ET AL.

*Corporations—Fraud of director—Action at law by minority stockholder.*

1. The general rule is that a stockholder's suit must be brought in a court of equity, but there are exceptions to this rule; citing *Kimmell v. Geeting,* 2 Grant, Cas. 125; *Kimmel v. Stoner,* 18 Penn. St. 155.
2. The right of the directors of a corporation to execute a mortgage to secure its indebtedness does not include the right of a member of that corporation, who is under obligations to carry the corporation paper, to introduce a dummy into the board of directors, and, confederating with him, direct the execution of a mortgage to another confederate, to whom the paper has been assigned for the purpose of avoiding these obligations, wrecking the corporation, and appropriating its

assets; nor does the right of a creditor to foreclose include the right of such confederate fraudulently to obtain the security for the purpose named, and to foreclose it in furtherance of that purpose.

Error to Wayne. (Reilly, J.) Argued November 3, 1892. Decided December 23, 1892.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Dickinson, Thurber & Stevenson,* for appellant, contended:

1. The true rule is stated in *Detroit v. Dean*, 106 U. S. 537, where it is said that a single stockholder can sue the corporation for the protection of his individual rights, but, when he sues to protect the corporate rights against third parties, he must show a refusal of the directors to act.

*Griffin, Warner & Hunt,* for defendants, contended:

1. We are unable to see what application *Detroit v. Dean*, 106 U. S. 537, has to the case. There is no pretense, however, that any application was made to the directors to act. It would hardly do in any case for a stockholder to assume that the directors would not act. Even if it were their inclination not to act, they might well repent upon a demand made by a stockholder. But we had supposed, from carefully reading the declaration, that the injury alleged to have been occasioned was based upon the promises and agreement made to Ryan, and the loss in value of his stock which had been brought about by their non-fulfillment, and not any wrong done to the corporation. Moreover, the case is not applicable otherwise. Ryan had full opportunity to protect the rights and property of the corporation in the mortgage foreclosure proceedings, if they were being invaded. He knew perfectly well that nothing wrong was being done, and therefore he made no attempt in that direction. Still further, if plaintiff has any such rights as is contended for by reason of being a stockholder or holding stock of Ryan, he should proceed in a court of equity. He surely has no standing in a court of law.

2. The declaration is framed upon the theory that the defendants have been guilty of a conspiracy, for which the plaintiff is entitled to recover. It was decided in this State in 1878 that, as a matter of pleading, a charge of conspiracy in the decla-

ration is mere surplusage, and is only matter of aggravation, and that conspiracy can be proved even if not charged; citing· *Hamilton v. Smith*, 39 Mich. 222; and no action lies for simply conspiring to do an unlawful act; it is doing the act itself, and the resulting damage to the plaintiff, which afford the ground of the action; citing *Kimball v. Harman*, 34 Md. 407; *Sheple· v. Page*, 12 Vt. 519; *Lee v. Kendall*, 56 Hun, 610; *Verplanck· v. Van Buren*, 76 N. Y. 259; *Brackett v. Griswold*, 112 Id. 457; *Van Horn v. Van Horn*, 52 N. J. Law, 284; *McHenry v. Sneer*, 56 Iowa, 649.

3. If an act be lawful, the intent or motive with which it is done· is immaterial; citing *Hale v. Bank*, 64 N. Y. 550; *Phelps v. Nowlen*, 72 Id. 39; *Neudecker v. Kohlberg*, 81 Id. 296.

McGRATH, C. J.  This is an appeal from a judgment. sustaining a demurrer to a declaration.

The declaration alleges that in February, 1891, John T.. Ryan was the owner of the stock and plant of certain knitting works, valued at from $100,000 to $160,000, sub-- ject to a floating indebtedness of about $55,000; that, in order to provide for the payment of this floating indebted-- ness and continuing the business, a corporation was organ- ized March 2, 1891, with a capital stock of $50,000, and the stock, plant, and assets were turned over to the cor-- poration.  The names of the stockholders, with the num-- ber of shares held by each, were as follows: Frank Howard,. 1,000; George C. Balch, 1,200; George Hanley, 2,300;. Isaac Mendelson, trustee, 500.  Mendelson represented. Simon & Co.  Hanley was indorser for Ryan and represented' him.  Howard, Balch, Mendelson, Ryan, and Simon were· elected directors.  Howard was elected president, and Balch secretary and treasurer.  Howard and Balch obtained their· interests because of their ability to carry the indebtedness, and in pursuance of a preliminary agreement to do so, and to provide the necessary funds to carry on the business.. An agreement was entered into between the corporation and Howard and Balch, by the terms of which Howard.

and Balch were to liquidate the floating indebtedness, and were to receive the company's notes, with 6 per cent. interest, and were to carry, renew, and extend the same for the convenience of the corporation. They were also to advance whatever further or other sums were deemed necessary by the directors to carry on the business.

Howard and Balch, in accordance with this agreement, assumed $45,000 of this floating indebtedness, and two notes of the corporation—one of $15,000 and one of $30,000—were executed by the corporation, and delivered to Balch. Simon & Co. received goods to the amount of their stock, and Mendelson assigned the shares held by him to the corporation. Howard assigned his interest and stock to Balch. Balch, by artifice, induced Ryan to readjust the shares of stock, and to assign to Thomas Balch, a brother, one share. The readjustment and this assignment gave to the Balches a controlling interest. New officers were elected. Thomas Balch became president, John T. Ryan vice president, and George C. Balch secretary and treasurer. George C. Balch, April 1, 1891, transferred the note for $15,000 to the Citizens' Savings Bank, and the note for $30,000 to George W. Balch, his father. A meeting of the board of directors was then called, and a resolution adopted, directing the execution of a chattel mortgage to George W. Balch on the stock and plant to secure the payment of said notes. George C. and Thomas Balch voted in favor of said resolution, and Ryan voted and protested against its adoption.

On April 9, 1891, before the maturity of either of said notes, George W. Balch filed a bill in the circuit court for the county of Wayne for the foreclosure of the chattel mortgage, and attached to it was an affidavit of George C. Balch, setting forth—

"That he had read the said bill of complaint, and knew

the contents thereof to be true, as to the said indebtedness; that he was familiar with the value of the mortgaged property, and believed that, unless carefully handled, and sold to the best advantage, it would not be sufficient to pay the said mortgage debt in full; that the said business was being run at a loss of from $50 to $75 a day; that the said corporation had but little money on hand, and was then practically without means to carry on its business; and that, if such business were to be permitted to be carried on under their present circumstances, the said complainant's mortgage security would be impaired and depreciated."

Service was had upon George C. Balch, as secretary and treasurer. A receiver was appointed April 16, 1891. The bill was taken as confessed May 19. A sale of the property was ordered and made on May 19, and on May 20 a final decree of foreclosure and for deficiency was entered, from which it appears that the property was sold to the Citizens' Savings Bank and George W. Balch for $39,500, out of which $1,037.29 was paid to the receiver and $38,-462.71 was applied upon the indebtedness, leaving a deficiency of $7,172.12.

The declaration alleges that the introduction of Thomas Balch into said firm, the readjustment of the shares of stock, the change made in the officers of said firm, the transfer of said notes, the resolution directing the execution of the chattel mortgage, the execution of said mortgage, and the sale of the property were acts done in pursuance of a fraudulent scheme to relieve George C. Balch from his obligations, to appropriate the assets, goods, and plant, and deprive plaintiff of his interest in said corporation, and that defendants unlawfully conspired together to accomplish the desired purposes.

We think the declaration sets forth a cause of action. The right of the directors of a corporation to execute a mortgage to secure its indebtedness does not include the

right of a member of that corporation, who is under obligations to carry the corporation paper, to introduce a dummy into the board of directors, and, confederating with him, direct the execution of a mortgage to another confederate, to whom the paper has been assigned for the purpose of avoiding these obligations, wrecking the corporation, and appropriating its assets; nor does the right of a creditor to foreclose include the right of such confederate fraudulently to obtain the security for the purpose named, and to foreclose it in furtherance of that purpose.

The general rule is that a stockholder's suit must be brought in a court of equity, but there are exceptions to this rule. *Kimmell v. Geeting*, 2 Grant, Cas. 125; *Kimmel v. Stoner*, 18 Penn. St. 155. In the present case the result is practically a dissolution of the corporation. There is nothing left but the shell. The value of the corporate property is susceptible of ascertainment. Plaintiff represents the only stockholder not involved in the conspiracy, and his interest is a matter of computation merely. This is not an action of trover, but of case for damage done plaintiff.

The judgment is reversed. Defendants will have 20 days in which to plead, and the record will be remanded.

The other Justices concurred.